IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THE HDD COMPANY, INC.,

               Plaintiff,

     -vs-

MINNESOTA LIMITED, LLC, *et al.*,

               Defendants.

Case No. 5:21-cv-04024-EFM-GEB

**JURY TRIAL DEMANDED**

## DEFENDANT MINNESOTA LIMITED, LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT & COUNTERCLAIM AGAINST PLAINTIFF

1        Defendant MINNESOTA LIMITED, LLC, through its lawyers William C. Walker,

2  Attorney at Law, and Derek S. Casey of TRIPLETT WOOLF GARRETSON, LLC, submits this

3  answer to Plaintiff THE HDD COMPANY, INC.'s First Amended Complaint and counterclaims

4  against Plaintiff THE HDD COMPANY, INC.

5        On March 26, 2021, Minnesota Limited, LLC filed cross claims against Defendant

6  Southern Star Central Gas Pipeline, Inc. Dkt. 1-1 at 656-76. To the extent any restatement of

7  these crossclaims is necessary, Defendant Minnesota Limited, LLC incorporates them by reference

8  and will file a re-stated answer, counterclaim, and crossclaim.

9        Minnesota Limited has filed a Motion to Remand (Dkt. 14), to return this case to the

10  District Court of Franklin County. Thus, Minnesota Limited answers and counterclaims by special

11  appearance and without consenting to jurisdiction or Southern Star's removal.

12        In support of its Answer and Counterclaim, Defendant Minnesota Limited states:

13

**DEFENDANT MINNESOTA LIMITED, LLC'S**
**<u>ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

Defendant MINNESOTA LIMITED, LLC, through its lawyers William C. Walker, Attorney at Law, and Derek S. Casey of TRIPLETT WOOLF GARRETSON, LLC, submits this answer to Plaintiff's First Amended Complaint.  For ease of reference, Plaintiff's allegations are restated in italics followed by Minnesota Limited's answer.  In support of its answer, Minnesota Limited states:

**<u>DEFENDANT'S ANSWER TO PLAINTIFF'S "THE PARTIES"</u>**

1.      *The HDD Company, Inc. is an Oregon Corporation authorized to do business in the state of Kansas, with its principal place of business at 4525 Serrano Parkway, Office Suite 210, El Dorado Hills, CA 95762.*

<u>Minnesota Limited's Answer</u>:  Minnesota Limited admits the allegations in Paragraph 1.

2.      *Defendant Minnesota Limited, LLC is a Minnesota Limited Liability Corporation authorized to do business in the state of Kansas, with its principal place of business at 18640 200th Street, PO Box 410, Big Lake, MN 55309.*

<u>Minnesota Limited's Answer</u>: Minnesota Limited admits the allegations in Paragraph 2, except that Minnesota Limited, LLC is a Minnesota Limited Liability Company, not corporation.

3.      *Defendant Southern Star Central Gas Pipeline, Inc. ("Southern Star") is a Delaware Corporation authorized to do business in the state of Kansas, with its principal place of business at 4700 Highway 56, Owensboro, Kentucky, 42301.*

<u>Minnesota Limited's Answer</u>:  Minnesota Limited admits the allegations in Paragraph 3.

1     **DEFENDANT'S ANSWER TO PLAINTIFF'S "JURISDICTION AND VENUE"**

2         4.     *Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the*

3 *parties are diverse and the amount sought by HDD is in excess of $75,000, but would also be*

4 *proper in the District Court of Franklin County, pursuant to K.S.A. § 60-308(b), in that defendants*

5 *conducted business and entered into contracts in the state of Kansas and that the properties at*

6 *issue are located in Kansas.*

7     <u>Minnesota Limited's Answer</u>:  Minnesota Limited denies that jurisdiction is proper in this

8 Court pursuant to 28 U.S.C. § 1332, as Plaintiff and Defendant Minnesota Limited are both citizens

9 of California and there is no diversity jurisdiction.  Dkt. 14.  Minnesota Limited admits that the

10 amount sought by HDD is in excess of $75,000 and that jurisdiction is proper in the District Court

11 of Franklin County because *inter alia* the properties at issue are partially located there.  Minnesota

12 Limited also admits that defendants conducted business in Kansas.  The remainder of the

13 allegations are denied.

14         5.     *Venue is proper in this judicial district district* [sic] *pursuant to 28 U.S.C. § 1391*

15 *because a substantial part of the events giving rise to this action occurred in this judicial district,*

16 *and would also be proper in the District Court of Franklin County, Kansas pursuant to K.S.A. §*

17 *60-604 in that the agreement was to be performed in part in Franklin County, the pipeline project*

18 *is located in Franklin County, and the properties at issue are located in Kansas. See Subcontract*

19 *Agreement attached as Exhibit 1 and incorporated by reference.*

20     <u>Minnesota Limited's Answer</u>:  Minnesota Limited denies that venue is proper in this

21 judicial district because this Court lacks subject-matter jurisdiction.  Minnesota Limited admits

22 that venue would be proper in the District Court of Franklin County, Kansas because the

Subcontract Agreement was to be performed in part in Franklin County, the pipeline project is located in part in Franklin County, and the properties at issue are located in Kansas.  However, because the Subcontract Agreement attached as Exhibit 1 is not fully readable as received by Minnesota Limited, Minnesota Limited denies that a true and correct copy of the Subcontract Agreement is incorporated by reference.   The remainder of the allegations are denied.

### DEFENDANT'S ANSWER TO PLAINTIFF'S "FACTUAL ALLEGATIONS"

6.      *HDD is a leading supplier of Horizontal Directional Drilling services for the installation, replacement, and rehabilitation of pipelines and utilities at vital crossings.  HDD provides services throughout the nation.*

Minnesota Limited's Answer:   Minnesota Limited admits the factual allegations in Paragraph 6, except that HDD is a "leading supplier," which is denied.

7.      *MNLTD is a pipeline transmission contractor doing business in many states.*

Minnesota Limited's Answer:  Minnesota Limited admits the allegations in Paragraph 7.

8.      *MNLTD entered into a contract with Southern Star to install 31.5 miles of 36" pipe through Franklin and Anderson County, Kansas, referred to as Project KS-C60266 ("Project" or "Pipeline Project").*

Minnesota Limited's Answer:  Minnesota Limited admits the allegations in Paragraph 8.

9.      *On January 9, 2020, HDD submitted a quote for directional drilling services and installation of the 36 inch steel pipeline at specific crossings for the Project. See Quote, Exhibit 2, included and incorporated within Subcontract Agreement, Exhibit 1.*

Minnesota Limited's Answer:  Minnesota Limited admits that on or about January 9, 2020, HDD submitted a quote that among other things provided for the services listed above.  Minnesota

1    Limited also admits that HDD's January 9, 2020 quote was included in the Subcontract

2    Agreement.  However, since the copy of the Quote received by Minnesota Limited is not fully

3    readable, Minnesota Limited denies that it is a true and accurate copy incorporated by reference

4    here.  The remainder of the allegation is a legal conclusion which is denied.

5        10.    *On January 17, 2020, HDD entered into an agreement with MNLTD to provide the*

6    *HDD services quoted. The amount of the agreement was for $6,185,936.00.  Exhibit l.*

7        Minnesota Limited's Answer:  Minnesota Limited admits that on or about January 17,

8    2020, HDD and Minnesota Limited entered into the Subcontract Agreement No. SR1916169002,

9    for certain HDD services and "full compensation" to HDD of $6,185,936.00.  The Subcontract

10   Agreement speaks for itself and HDD's remaining summary of the document is denied.

11       11.    *Per the Subcontract Agreement, payment was to be made through monthly progress*

12   *payments "within seven (7) days after [MNLTD] receive each monthly payment from the project*

13   *owner, but in no event later than 120 days from the date (MNLTD) received [HDD]'s invoice."  A*

14   *final payment was to be made within 30 days after MNLTD received HDD's final billing and*

15   *HDD's work has been completed and accepted. Exhibit 1.*

16       Minnesota Limited's Answer:  Paragraph 11 purports to summarize portions of the

17   Subcontract Agreement, which speaks for itself.  Minnesota Limited denies that Paragraph 11

18   accurately states or summarizes the Subcontract Agreement.

19       12.    *The Subcontract Agreement provided that HDD's compensation and time for*

20   *completion would be equitably adjusted to account for any resulting delay and added costs due to*

21   *differing site conditions.  Exhibit 1.*

Minnesota Limited's Answer:   Paragraph 12 purports to summarize portions of the Subcontract Agreement, which speaks for itself.  Minnesota Limited denies that Paragraph 12 accurately summarizes the Subcontract Agreement.

13.    *The Subcontract Agreement provided that "All work stoppages that arise through no fault of The HDD Company will be billed at $14,500 (no crew on site)." Exhibit 1.*

Minnesota Limited's Answer:   Paragraph 13 purports to summarize portions of the Subcontract Agreement, which speaks for itself.  Minnesota Limited denies that Paragraph 13 accurately summarizes the Subcontract Agreement.

14.    *The Subcontract Agreement required that MNLTD "[P]rovide and maintain suitable truck access to and from entry and exit locations" and "[P]rovide stable, level, matted and/or graveled work pads for each bore." Exhibit 1.*

Minnesota Limited's Answer:   Paragraph 14 purports to summarize portions of the Subcontract Agreement, which speaks for itself.  Minnesota Limited denies that Paragraph 14 accurately summarizes the Subcontract Agreement.

15.    *Southern Star designed the pipe to be used, the method of installation, the location of the entry and exit points, and the diameter of the borehole for each horizontal directional drill.*

Minnesota Limited's Answer:  Minnesota Limited admits the allegations in Paragraph 15.

16.    *Within the Subcontract Agreement, HDD excluded all design responsibility: "The HDD Company and its personnel are not the Project Engineers. Therefore we exclude all design and engineering services unless any are specifically noted as included in this proposal. Any drilling plans or profiles that we submit to you will be based upon the design information in the contract documents and our experience as HDD contractors.  Any plans or profiles we provide*

1  *are recommendations only and are subject to review and approval by the project owner and/or its*

2  *engineers." Exhibit 1.*

3      <u>Minnesota Limited's Answer</u>:  Paragraph 16 purports to summarize portions of the

4  Subcontract Agreement, which speaks for itself.  Minnesota Limited denies that Paragraph 16

5  accurately summarizes the Subcontract Agreement.

6      17.  *HDD's work on the project is complete.*

7      <u>Minnesota Limited's Answer</u>:  Although Minnesota Limited admits that HDD finished

8  working on the Project, Minnesota Limited denies HDD completed its work on the project in

9  accordance with the Subcontract Agreement.

10      18.  *MNLTD has made payments in the amount of $3,115,029.19.  The unpaid balance*

11  *of $2,471,266.81, as well as retainage withheld of $599,640.00, leaves a balance due and owing*

12  *of $3,070,906.81.*

13      <u>Minnesota Limited's Answer</u>:  Minnesota Limited denies the allegation in Paragraph 18.

14      19.  *Due to no fault of HDD, delays occurred on the project.  Delays were incurred due*

15  *to weather, including lightning strikes, as well as insufficient site access for HDD equipment.*

16      <u>Minnesota Limited's Answer</u>:  Minnesota Limited admits that there were delays that

17  occurred on the project due to no fault of HDD.  Minnesota Limited also admits delays were

18  incurred due to weather, including lightning strikes, as well as insufficient site access for HDD

19  equipment.  However, Minnesota Limited denies any implication that there were no delays on the

20  project that were HDD's fault.

21      20.  *As contemplated within the Subcontract Agreement, HDD incurred delay expenses*

22  *of $159,868.58 as well as standby expenses of $500,975.00.*

1    Minnesota Limited's Answer:  Minnesota Limited denies the allegations in Paragraph 20.

2    21.    *Due to improper design of the bore and pipe, coating damage occurred.  Due to*

3    *the coating damage, HDD was tasked with reinstalling the pipe.  The extra work and resulting*

4    *delays due to extraction, and re-installation of the pipe resulted in additional costs to HDD of*

5    *$1,600,392.89.*

6    Minnesota Limited's Answer:  Minnesota Limited admits the allegations in Paragraph 21.

7    22.    *Due to undisclosed differing site conditions, HDD incurred additional boring and*

8    *delay expenses of $555,000.*

9    Minnesota Limited's Answer:  Minnesota Limited denies the allegations in Paragraph 22.

10    23.    *A total balance due and owing to HDD under the Subcontract Agreement, delays,*

11    *extra work, and change orders from improper design and undisclosed differing site conditions is*

12    *$5,887,143.28.*

13    Minnesota Limited's Answer:  Minnesota Limited denies the allegations in Paragraph 23.

14    24.    *Demand has been made on this unpaid balance.  MNLTD, without justification or*

15    *excuse, has refused to make further payments on the amounts due.*

16    Minnesota Limited's Answer:  Minnesota Limited admits that HDD has requested payment

17    of unpaid amounts and that Minnesota Limited has not paid all amounts HDD has requested.

18    Minnesota Limited otherwise denies the remaining allegations in Paragraph 24.

19    **DEFENDANT'S ANSWER TO PLAINTIFF'S "COUNT I – BREACH OF CONTRACT"**

20    25.    *HDD hereby incorporates by reference the allegations contained in paragraphs 1*

21    *through 33* [sic] *above as though fully set forth herein in their entirety.*

1    <u>Minnesota Limited's Answer</u>:  Minnesota Limited hereby incorporates by reference its

2    responses to the allegations in Paragraphs 1 through 24 above as though fully set forth herein.

3    26.    *The Subcontract Agreement constitutes a valid, binding, and enforceable*

4    *agreement.*

5    <u>Minnesota Limited's Answer</u>:  Minnesota Limited admits the allegations in Paragraph 26.

6    27.    *HDD performed on the Subcontract Agreement by providing the material and labor*

7    *identified in the Agreement.*

8    <u>Minnesota Limited's Answer</u>:  Minnesota Limited admits the allegations in Paragraph 27,

9    except to the extent it implies that HDD has performed all of its obligations on the Subcontract

10   Agreement, which is denied.

11   28.    *MNTLD materially breached its duties and obligations under the agreement by*

12   *failing to pay HDD amounts due pursuant to the terms of the Agreement.*

13   <u>Minnesota Limited's Answer</u>:  Minnesota Limited denies the allegations in Paragraph 28.

14   29.    *Due to the breach of the Agreement by MNLTD, HDD has been harmed and is*

15   *entitled to damages.*

16   <u>Minnesota Limited's Answer</u>:  Minnesota Limited denies the allegations in Paragraph 29.

17   WHEREFORE, Defendant MINNESOTA LIMITED, LLC, through its lawyers William

18   C. Walker, Attorney at Law, and Derek S. Casey of TRIPLETT WOOLF GARRETSON, LLC,

19   demands JUDGMENT denying Plaintiff's First Amended Complaint, dismissing Plaintiff's claims

20   with prejudice, and granting Defendant recovery of its attorneys' fees, expenses, and costs, insofar

21   as allowed by law, with such other and further relief as the Court deems just and equitable.

1      **<u>DEFENDANT'S ANSWER TO PLAINTIFF'S "COUNT II – QUANTUM MERUIT"</u>**

2      30.      *In the alternative to its allegations of Breach of Contract (Count I), HDD asserts*

3 *its quantum meruit claim as follows.*

4      <u>Minnesota Limited's Answer</u>: Minnesota Limited denies the allegations in Paragraph 30

5 to the extent a response is required.

6      31.      *HDD performed work under circumstances consistent with contract relations on*

7 *the Pipeline Project that conferred a benefit upon MNLTD.*

8      <u>Minnesota Limited's Answer</u>: Minnesota Limited admits that it received a benefit from

9 work HDD performed, but otherwise denies the allegations in Paragraph 31.

10      32.      *At all relevant times, MNLTD knew or should have known that HDD was*

11 *performing work on the Pipeline Project.*

12      <u>Minnesota Limited's Answer</u>:   Minnesota Limited admits that it knew that HDD was

13 performing work on the Pipeline Project. Because "[a]t all relevant times" is not specified,

14 Minnesota Limited otherwise denies the allegations in Paragraph 32.

15      33.      *MNLTD acquiesced and accepted the work which directly benefitted MNLTD.*

16      <u>Minnesota Limited's Answer</u>: Minnesota Limited admits that it accepted some work which

17 directly benefited Minnesota Limited, but otherwise denies the allegations in Paragraph 33.

18      34.      *The fair and reasonable value of the work performed under the Contract is*

19 *$9,002,172.47.*

20      <u>Minnesota Limited's Answer</u>: Minnesota Limited denies the allegations in Paragraph 34.

21      35.      *As of this date, HDD has been paid $3,115,029.19 for its work on the Project.*

1    <u>Minnesota Limited's Answer</u>:   Minnesota Limited admits that it has paid HDD over

2    $3,000,000 for HDD's work pursuant to the Subcontractor Agreement, but denies the remainder

3    of the allegations in Paragraph 35.

4         36.    *HDD is still owed $5,887.143.28 for the work on the Project despite making*

5    *demand for the same.*

6    <u>Minnesota Limited's Answer</u>:    Minnesota Limited admits that HDD has requested

7    payment of additional money on the Project, but otherwise denies the allegations in Paragraph 36.

8         37.    *MNLTD received and retained the benefit of $9,002,172.47 worth of work*

9    *performed by HDD without paying for the same.*

10   <u>Minnesota Limited's Answer</u>:  Minnesota Limited denies the allegations in Paragraph 37.

11        38.    *As a direct result of MNLTD's failure to pay for the work on the Project, HDD has*

12   *been damaged in the amount of $5,887,143.28.*

13   <u>Minnesota Limited's Answer</u>:  Minnesota Limited denies the allegations in Paragraph 38.

14        39.    *It would be inequitable and unjust for MNLTD to retain the benefit of the work*

15   *provided by HDD without paying for the same.*

16   <u>Minnesota Limited's Answer</u>:  Minnesota Limited denies the allegations in Paragraph 39.

17        WHEREFORE, Defendant MINNESOTA LIMITED, LLC, through its lawyers William

18   C. Walker, Attorney at Law, and Derek S. Casey of TRIPLETT WOOLF GARRETSON, LLC,

19   demands JUDGMENT denying Plaintiff's First Amended Complaint, dismissing Plaintiff's claims

20   with prejudice, and granting Defendant recovery of its attorneys' fees, expenses, and costs, insofar

21   as allowed by law, with such other and further relief as the Court deems just and equitable.

1    <u>**DEFENDANT'S ANSWER TO PLAINTIFF'S "COUNT III – UNJUST ENRICHMENT"**</u>

2    40.    *In the alternative to its claims for breach of contract and quantum meruit, HDD*

3    *asserts its claim for unjust enrichment as follows.*

4    <u>Minnesota Limited's Answer</u>:  Minnesota Limited denies the allegations in Paragraph 40

5    to the extent a response is required.

6    41.    *HDD performed work on the Pipeline Project that conferred a benefit upon*

7    *MNLTD.*

8    <u>Minnesota Limited's Answer</u>:  Minnesota Limited admits the allegations in Paragraph 41.

9    42.    *At all relevant times, MNLTD knew or should have known that HDD was*

10    *performing work on the Pipeline Project, and acquiesced and accepted the work which directly*

11    *benefitted MNLTD.*

12    <u>Minnesota Limited's Answer</u>:  Minnesota Limited admits that it knew that HDD was

13    performing work on the Pipeline Project and that it accepted some work which directly benefited

14    Minnesota Limited. Minnesota Limited otherwise denies the remaining allegations in Paragraph

15    42.

16    43.    *The fair and reasonable value of the work performed under the Contract is*

17    *$9,002,172.47.*

18    <u>Minnesota Limited's Answer</u>:  Minnesota Limited denies the allegations in Paragraph 43.

19    44.    *As of this date, HDD has been paid $3,115,029.19 for its work on the Project.*

20    <u>Minnesota Limited's Answer</u>:  Minnesota Limited admits that it has paid HDD over

21    $3,000,000 for HDD's work pursuant to the Subcontractor Agreement, but denies the remainder

22    of the allegations in Paragraph 44.

1    45.    *HDD· is still owed $5,887.143.28 for the Work on the Project despite making*

2    *demand for the same.*

3    Minnesota Limited's Answer:  Minnesota Limited denies the allegations in Paragraph 45.

4    46.    *MNLTD received and retained the benefit of $9,002,172.47 worth of work*

5    *performed by HDD without paying for the same.*

6    Minnesota Limited's Answer:  Minnesota Limited denies the allegations in Paragraph 46.

7    47.    *As a direct result of MNLTD's failure to pay for the work on the Project, HDD has*

8    *been damaged in the amount of $5,887,143.28.*

9    Minnesota Limited's Answer:  Minnesota Limited denies the allegations in Paragraph 47.

10    48.    *It would be inequitable and unjust for MNLTD to retain the benefit of the work*

11    *provided by HDD without paying for the same.*

12    Minnesota Limited's Answer:  Minnesota Limited denies the allegations in Paragraph 48.

13    WHEREFORE, Defendant MINNESOTA LIMITED, LLC, through its lawyers William

14    C. Walker, Attorney at Law, and Derek S. Casey of TRIPLETT WOOLF GARRETSON, LLC,

15    demands JUDGMENT denying Plaintiff's First Amended Complaint, dismissing Plaintiff's claims

16    with prejudice, and granting Defendant recovery of its attorneys' fees, expenses, and costs, insofar

17    as allowed by law, with such other and further relief as the Court deems just and equitable.

18    **DEFENDANT'S ANSWER TO PLAINTIFF'S**
19    **"COUNT IV – FORECLOSURE OF MECHANIC'S LIEN**
20    **ON SOUTHERN STAR PIPELINE PROJECT (K.S.A. 55-208)"**

21    49.    *HDD hereby incorporates by reference the allegations contained in paragraphs 1*

22    *through 24 above as though fully set forth herein in their entirety.*

1    Minnesota Limited's Answer:  Minnesota Limited hereby incorporates by reference its

2    responses to the allegations in Paragraphs 1 through 24 above as though fully set forth herein.

3    50.    *HDD seeks foreclosure of its lien on the Southern Star Pipeline Project pursuant*

4    *to Kansas law.*

5    Minnesota Limited's Answer:  Minnesota Limited admits that HDD seeks foreclosure of

6    its lien, but otherwise denies that such foreclosure is proper under Kansas law.

7    51.    *HDD furnished work on the Pipeline Project beginning on or about January 17,*

8    *2020 and the work was furnished for, applied to, used and consumed in the Pipeline Project.*

9    Minnesota Limited's Answer:  Minnesota Limited admits the allegations in Paragraph 51,

10    except for the beginning date of HDD furnishing work, which is denied.

11    52.    *HDD's work furnished for, applied to, used and consumed in the Pipeline Project*

12    *is set out in the statement of account showing the amount still due and owing attached as Exhibits*

13    *B-D of HDD's Pipeline Project Mechanic's Lien, and incorporated herein as Exhibits 3, 4, and 5.*

14    Minnesota Limited's Answer:  Minnesota Limited admits HDD provided work for the

15    Pipeline Project and that there is a statement of account attached as alleged, but otherwise denies

16    the allegations in Paragraph 52.

17    53.    *In spite of HDD's demand for payment, MNLTD failed and refused to pay the now*

18    *outstanding balance of $5,887,143.28.*

19    Minnesota Limited's Answer:   Minnesota Limited admits it received a demand for

20    payment, but otherwise denies the allegations in Paragraph 53.

21    54.    *On January 6, 2021, and within four months of the last date that HDD performed*

22    *work on the Pipeline Project, HDD properly filed its mechanic's lien against the Pipeline Project*

1     *with the Clerk of the District Court of Franklin County, Kansas, which has been designated*

2     *Mechanic's Lien No. FR-2021-SL-000002 ("Pipeline Project Mechanic's Lien"). A true and*

3     *accurate copy of HDD's Pipeline Project Mechanic's Lien is attached to this Petition as Exhibit*

4     *6.*

5     <u>Minnesota Limited's Answer</u>:   Minnesota Limited denies that January 6, 2021 fell within

6     four months of the last date HDD performed work on the Pipeline Project.  Minnesota Limited is

7     without knowledge sufficient to admit or deny the remainder of the allegations, which also contains

8     legal conclusions, so they are denied.

9     55.     *HDD fully complied with all statutory requirements under K.S.A. 55-208, et seq.*

10     *when it filed its Pipeline Project Mechanic's Lien.*

11     <u>Minnesota Limited's Answer</u>:  Minnesota Limited is without knowledge sufficient to admit

12     or deny the allegations in Paragraph 55, which also contains legal conclusions, so they are denied.

13     56.     *After filing its Pipeline Project Mechanic's Lien, HDD filed a notice of the Lien in*

14     *Anderson County, KS, attached hereto as Exhibit 7.*

15     <u>Minnesota Limited's Answer</u>:  Minnesota Limited is without knowledge sufficient to admit

16     or deny the allegations in Paragraph 56, so they are denied.

17     57.     *HDD sent copies of the Pipeline Project Mechanic's Lien to MNLTD and Southern*

18     *Star via certified mail which were received on January 15, 2021.  Return receipts for the*

19     *Mechanic's Lien are attached as Exhibit 8 and Exhibit 9.*

20     <u>Minnesota Limited's Answer</u>:  Minnesota Limited admits it received a copy of HDD's

21     mechanic's lien as shown by the return receipt.  Minnesota Limited is without knowledge sufficient

22     to admit or deny the remainder of Paragraph 57, so it is denied.

1     58.   *HDD notified all of the landowners of the Pipeline Project Mechanic's Lien.  A*

2    *copy of the return of service receipts are attached to this Petition as Exhibit 10 (Bures), 11*

3    *(Pickert-Family Trust), 12 (Rayne), 13 (Rayne Family Trust), 14 (Oswego), and 15 (Black).*

4     <u>Minnesota Limited's Answer</u>:  Minnesota Limited is without knowledge sufficient to admit

5    or deny the allegations in Paragraph 58, so they are denied.

6     59.   *This lawsuit to enforce HDD's Pipeline Project Mechanic's Lien was filed less than*

7    *one year after the Mechanic's Lien was filed.*

8     <u>Minnesota Limited's Answer</u>:  Minnesota Limited admits that HDD filed this lawsuit

9    within one year of January 6, 2021.  Minnesota Limited is without knowledge sufficient to admit

10    or deny the remainder of the allegations in Paragraph 59, so they are denied.

11     60.   *The amounts claimed and prices stated in HDD's Pipeline Project Mechanic's Lien*

12    *are the fair and reasonable value of the labor and materials HDD supplied or performed to*

13    *improve the Pipeline as set for in HDD's Pipeline Project Mechanic's Lien Exhibits B and C,*

14    *incorporated herein as Exhibits 3 and 4.*

15     <u>Minnesota Limited's Answer</u>:  Minnesota Limited admits that there are amounts claimed

16    and prices stated in the exhibits, but otherwise denies the allegations in Paragraph 60.

17     61.   *All of the work described in HDD's Pipeline Project Mechanic's Lien was*

18    *incorporated into and directly benefitted and improved the Pipeline Project.*

19     <u>Minnesota Limited's Answer</u>:  Minnesota Limited denies the allegations in Paragraph 61.

20     62.   *At the time it was filed, the Mechanic's Lien was a true and accurate account of*

21    *HDD's work and demand of MNLTD, allowing a credit for all valid setoffs and itemizing the labor*

22    *and materials supplied by HDD for the Pipeline Project.*

1    Minnesota Limited's Answer: Minnesota Limited denies the allegations in Paragraph 62.

2        63.    *HDD has performed and complied with all conditions precedent to the creation and*

3    *enforcement of its mechanic's lien, including service of its mechanic's lien on MNLTD and*

4    *Southern Star.*

5    Minnesota Limited's Answer:  Minnesota Limited is without knowledge sufficient to admit

6    or deny the allegations in Paragraph 63, so they are denied.

7        64.    *HDD's lien on the Pipeline Project, being properly perfected under Kansas law,*

8    *entitles HDD to foreclose said Pipeline interest installed on the Pipeline which is held for the debt*

9    *contracted, the proceeds of which shall be used to satisfy the encumbrances on said Pipeline in*

10   *the priority established by this Court.*

11   Minnesota Limited's Answer:   Minnesota Limited denies the allegations in Paragraph 64.

12       65.    *All of the Work described in HDD's Lien was furnished to MNLTD on the faith and*

13   *credit of HDD's lien rights against the Pipeline Project.*

14   Minnesota Limited's Answer:  Minnesota Limited denies the allegations in Paragraph 65.

15       66.    *All of the Work described in HDD's lien directly benefitted and improved the*

16   *Pipeline Project.*

17   Minnesota Limited's Answer:  Minnesota Limited denies the allegations in Paragraph 66.

18       67.    *MNLTD was obligated, but failed to pay HDD for the work furnished to improve*

19   *the Pipeline Project.*

20   Minnesota Limited's Answer:  Minnesota Limited denies the allegations in Paragraph 67.

21       WHEREFORE, Defendant MINNESOTA LIMITED, LLC, through its lawyers William

22   C. Walker, Attorney at Law, and Derek S. Casey of TRIPLETT WOOLF GARRETSON, LLC,

1   demands JUDGMENT denying Plaintiff's First Amended Complaint, dismissing Plaintiff's claims

2   with prejudice, and granting Defendant recovery of its attorneys' fees, expenses, and costs, insofar

3   as allowed by law, with such other and further relief as the Court deems just and equitable.

4   **PLAINTIFF'S AFFIRMATIVE DEFENSES**

5   Without making any admission that it bears the burden of proof on the items listed below,

6   Defendant MINNESOTA LIMITED, LLC, through its lawyers William C. Walker, Attorney at

7   Law, and Derek S. Casey of TRIPLETT WOOLF GARRETSON, LLC, states the following

8   defenses to the allegations and claims stated in Plaintiff THE HDD COMPANY, INC.'s First

9   Amended Complaint:

10  1.    Plaintiff's First Amended Complaint fails to state a claim for which relief may be

11  granted under the Subcontract Agreement or applicable law.

12  2.    HDD's claims are barred in whole or in part by the terms of the Subcontract

13  Agreement.

14  3.    Prior material breach of the Subcontract Agreement.

15  4.    Assumption of risk.

16  5.    Comparative fault.

17  6.    Estoppel.

18  7.    Payment.

19  8.    Setoff.

20  9.    Statute of limitations.

21  10.   Waiver.

22  11.   Failure to mitigate damages.

1        12.     Minnesota Limited currently has insufficient knowledge and information upon

2  which to form a belief as to whether it may have additional defenses.  It therefore reserves the right

3  to assert additional defenses in the event that discovery or investigation indicates that such

4  defenses are appropriate.

5        WHEREFORE, Defendant MINNESOTA LIMITED, LLC, through its lawyers William

6  C. Walker, Attorney at Law, and Derek S. Casey of TRIPLETT WOOLF GARRETSON, LLC,

7  demands JUDGMENT against Plaintiff THE HDD COMPANY, Inc. denying Plaintiff's First

8  Amended Complaint, dismissing Plaintiff's claims with prejudice, and granting Defendant

9  recovery of its attorneys' fees, expenses, and costs, insofar as allowed by law, with such other and

10  further relief as the Court deems just and equitable.

11
12
  **DEFENDANT MINNESOTA LIMITED, LLC'S COUNTERCLAIM AGAINST**
**PLAINTIFF THE HDD COMPANY, INC.**

13        Defendant MINNESOTA LIMITED, LLC, through its lawyers William C. Walker,

14  Attorney at Law, and Derek S. Casey of TRIPLETT WOOLF GARRETSON, LLC, counterclaims

15  against Plaintiff THE HDD COMPANY, INC., for damages, indemnification, and other remedies

16  for Plaintiff's breaches of contract in an amount in excess of $75,000.   In support of its

17  counterclaim, Defendant Minnesota Limited states:

18                          **NATURE OF THE ACTION**

19        1.     This breach of contract and indemnification counterclaim arises from Minnesota

20  Limited, LLC's ("Minnesota Limited") construction of ~31.5 miles of natural gas pipeline (the

21  "Project") for Southern Star Central Gas Pipeline, Inc. ("Southern Star") in Franklin and Anderson

22  counties, Kansas.

1       2.      The HDD Company, Inc. ("HDD") was a subcontractor of Minnesota Limited that

2    was contracted with to provide horizontal directional drilling, boring, other construction services,

3    and materials for Minnesota Limited and Southern Star Central Gas Pipeline, Inc. on the Project.

4       3.      HDD breached its agreement with Minnesota Limited by, among other things,

5    causing lengthy delays, refusing to mobilize its drilling rigs as agreed, and damaging pipe during

6    repeated failed installations.  As a result, HDD caused Minnesota Limited to incur millions of

7    dollars in damages for which HDD is responsible for paying.

8       4.      Accordingly, in September 2020, Minnesota Limited requested in writing that

9    HDD pay $10,366,233.99 for the costs that HDD caused Minnesota Limited to incur and HDD is

10    obligated to pay.

11       5.      To date, HDD has not paid any of the millions of dollars it owes to Minnesota

12    Limited.  As a result, Minnesota Limited now counterclaims for the over $10,000,000 that HDD

13    owes for breach of contract and indemnification.

**PARTIES**

15       6.      Minnesota Limited is a pipeline transmission contractor that has successfully

16    constructed natural gas, crude oil, refined products, and hydrocarbon pipelines and facilities

17    throughout the United States.  Minnesota Limited is a limited liability company formed under the

18    laws of the State of Minnesota, with its principal place of business located at 18640 200th Street,

19    Big Lake, MN 55309.

20       7.      Upon information and belief, the HDD Company, Inc. is an Oregon Corporation

21    authorized to do business in the state of Kansas, with its principal place of business in California.

22    According to its First Amended Complaint, HDD Company provides services across the nation.

1   **FACTUAL BACKGROUND**

2   8.   On or about September 17, 2019, Minnesota Limited and Southern Star entered into

3   a written contract (Contract Number 2019-2009, hereafter the "September 17, 2019 contract")

4   wherein Minnesota Limited agreed to provide certain construction services and materials for

5   Southern Star on the Project.

6   9.   Minnesota Limited did in fact provide construction services and materials for

7   Southern Star on the Project across 2020 and into 2021.

8   10.   As part of the September 17, 2019 contract, Minnesota Limited agreed to provide

9   Southern Star certain horizontal directional drilling, boring, materials, and related services on the

10   Project.

11   11.   HDD provided bids to Minnesota Limited to provide horizontal directional drilling,

12   boring, other construction services, and materials on the Project.

13   12.   On or about January 17, 2020, Minnesota Limited and HDD signed Subcontractor

14   Agreement No. SR1916169002 (the "Subcontractor Agreement") by which HDD agreed to

15   provide horizontal directional drilling, boring, other construction services, and materials on the

16   Project for the "full compensation" of $6,185,936.00, subject to the terms and conditions in the

17   Subcontractor Agreement.

18   13.   HDD's January 9, 2020 and January 17, 2020 bid quotes were attached to the

19   Subcontractor Agreement that Minnesota Limited and HDD signed.  However, the Subcontractor

20   Agreement also stated that:

21   Any terms and conditions proposed in Subcontractor's acceptance of or in any
22   acknowledgment, invoice, or other form of Subcontractor that add to, vary from, or
23   conflict with these terms are hereby objected to.  Any such proposed terms shall be
24   void and these terms and conditions (1) shall constitute the complete and exclusive

statement of the terms and conditions of the contract between the parties, and (2) may be modified only by written instrument executed by the authorized representative of both parties.

14.     HDD agreed that "[a]ll Work will be done on a timely basis[,]" and that "[t]ime is of the essence."

15.     In addition, HDD agreed that "Subcontractor, not Contractor, assumes all the risk related to in performing its work under this Agreement[.]"

16.     Further, HDD agreed that (1) "all work will be of good quality, free from faults and defects and in conformance with any Purchase Order and attachments thereto, including any specifications therein[;]" and (2) "All Work not so conforming to these standards may be considered defective, and the Subcontractor shall promptly repair and make good, after notice by the Contractor and Owner and without cost to the Contractor and Owner, any damages, defects or faults resulting from imperfect or defective Work done or materials furnished by the Subcontractor."

17.     After HDD and Minnesota Limited signed the Subcontractor Agreement, HDD performed horizontal directional drilling, boring, and other related services on the Project.

18.     Horizontal directional drilling is labor and equipment intensive.

19.     Horizontal directional drilling is done according to a strict schedule, to permit the crews and equipment performing that work and installing the pipe to proceed in a timely and efficient fashion along the right of way.  When such work is delayed, Minnesota Limited incurs significant costs.

20.     HDD failed to follow the agreed schedule for its drilling, causing delays of over two months on its work on the Project.

21.    After HDD fell behind schedule, it provided a recovery schedule to Minnesota Limited.  HDD also failed to meet its recovery schedule.

22.    Through HDD's fault and delays, Minnesota Limited incurred additional costs for which HDD is obligated to pay.  Such additional costs include additional mat rental costs, additional support costs, and additional material costs.

23.    HDD was to perform horizontal directional drills at three sites according to an agreed schedule.

24.    The three sites for HDD's horizontal directional drilling were Cedar Creek, Pottawatomie Creek, and Flint Hill.

25.    According to HDD's agreed schedule, HDD was to move its drilling rig from the Cedar Creek drilling site upon completion to the Pottawatomie Creek drilling site.

26.    HDD refused to move the drilling rig to Pottawatomie Creek upon completion of the Cedar Creek drill as agreed, which caused Minnesota Limited to incur additional costs for which HDD is obligated to pay.

27.    After HDD refused to move the drilling rig to Pottawatomie Creek per the schedule, it agreed to keep the rig on site in the event that the drilling rig in use at the Flint Hill drilling site could not be moved to Pottawatomie Creek.

28.    After HDD failed its first drill at Flint Hill, Minnesota Limited asked HDD to honor its agreement to move the drilling rig to Pottawatomie Creek.  HDD refused.  Instead, HDD moved the rig to another job out-of-state, leaving the Flint Hill rig (which was in use at that time) as the only alternative.  This breach caused Minnesota Limited to incur additional costs for which HDD is obligated to pay.

29.     At the Flint Hill drilling site, HDD repeatedly failed the horizontal drill.  HDD's multiple failed attempts at this drill caused additional work, delays, costs, and damage to the pipe. Minnesota Limited incurred costs for HDD's failed drills for which HDD is obligated to pay.

30.     HDD also performed road bores which took over 90 days longer than HDD's agreed schedule.  Minnesota Limited incurred additional costs as a result for which HDD is obligated to pay.

31.     In the Subcontractor Agreement, HDD agreed that "it is a condition precedent to payment that if Owner withholds payments for that portion of any work performed by Subcontractor, then Minnesota Limited is only obligated to pay Subcontractor after receiving payment from the Owner."

32.     Southern Star has not paid Minnesota Limited all of the amounts Southern Star owes for Minnesota Limited's work and costs for the Project.

33.     Southern Star is withholding payment to Minnesota Limited for work HDD performed.

34.     Accordingly, pursuant to the Subcontractor Agreement, Minnesota Limited is withholding such payments from HDD.

### COUNT I – Breach of Contract

Defendant MINNESOTA LIMITED, LLC, by and through its Counsel, William C. Walker Attorney-at-Law, and Derek S. Casey of TRIPLETT WOOLF GARRETSON, LLC, restates each of the paragraphs 1 through 34 above as though fully set forth herein and further states:

35.     Minnesota Limited entered into a binding and enforceable contract with HDD. Minnesota Limited performed its obligations as agreed with HDD.

36.     HDD breached its agreement with Minnesota Limited by failing to pay Minnesota Limited the amounts due from HDD pursuant to their agreement.

37.     Due to HDD's breaches of the agreement, Minnesota Limited has been harmed and has suffered damages in the amount of at least $10,366,223.99.

38.     In addition, HDD agreed in the Subcontractor Agreement that Minnesota Limited "reserves the right to withhold such sums as may be necessary to pay expenses, including costs and attorney's fees, caused by, or related to, Subcontractor's breach of Agreement."

39.     Minnesota Limited is withholding sums necessary to pay expenses, including costs and attorney's fees, caused by, or related to HDD's breach of the Subcontractor Agreement.

40.     Given HDD's breaches of the Subcontractor Agreement, Minnesota Limited is entitled to the sums necessary to pay expenses, including costs and attorney's fees, caused by or related to HDD's breaches of the Subcontractor Agreement.

41.     HDD has committed breaches of contract, as illustrated above and to be proven at trial.

42.     Minnesota Limited is damaged and will continue to be damaged by HDD's breaches.

WHEREFORE, Defendant MINNESOTA LIMITED, LLC, by and through its Counsel, William C. Walker, Attorney-at-Law, and Derek S. Casey of TRIPLETT WOOLF GARRETSON, LLC, demands JUDGMENT against Plaintiff THE HDD COMPANY, INC. for (A) damages in an amount in excess of $75,000.00 to remedy Plaintiff's breaches of contract; (B) pre-judgment and post-judgment interest; and (C) recovery of its costs, expenses, and attorneys' fees insofar as allowed by law, with such other and further relief as the Court deems just, proper, and equitable.

### COUNT II – Indemnification

Defendant MINNESOTA LIMITED, LLC, by and through its Counsel, William C. Walker Attorney-at-Law, and Derek S. Casey of TRIPLETT WOOLF GARRETSON, LLC, restates each of the paragraphs 1 through 42 above as though fully set forth herein and further states:

43.     In the Subcontractor Agreement, HDD entered into a valid and enforceable indemnification agreement with Minnesota Limited.

44.     The Subcontractor Agreement provides that HDD "shall indemnify, defend and hold harmless Contractor as set forth in Section VII."  Section VII provides that:

> To the fullest extent permitted by law, the Subcontractor shall indemnify the Owner, Contractor, and the agents and employees of any of them from and against claims, damages, losses and expenses, arising out of or in connection with, or resulting from the negligent performance of the Subcontractors work, the Subcontractor's subcontractors work, or anyone directly or indirectly employed by them but only to the extent caused by acts or omissions by either or any of them. In addition thereto, Subcontractor indemnifies Owner, Contractor and the agents and employees of any of them for expenses including attorney's fees and costs, incurred in responding to and defending against any claim or in enforcing this provision.

45.     Minnesota Limited has performed the Subcontractor Agreement as set out therein.

46.     As illustrated above and to be proven at trial, HDD has breached the Subcontractor Agreement.

47.     Minnesota Limited faces claims, damages, losses, and expenses caused by HDD's negligent performance of its work.

48.     Minnesota Limited has incurred expenses, including attorney's fees and costs, in responding to claims and enforcing the indemnification provision in the Subcontractor Agreement.

49.     Accordingly, Minnesota Limited is entitled to indemnification by HDD for claims, damages, losses, expenses, attorneys' fees, and costs as set forth in the Subcontractor Agreement.

1    WHEREFORE, Defendant MINNESOTA LIMITED, LLC, by and through its Counsel,

2  William C. Walker, Attorney-at-Law, and Derek S. Casey of TRIPLETT WOOLF GARRETSON,

3  LLC, demands JUDGMENT against Plaintiff THE HDD COMPANY, INC. for (A)

4  indemnification in an amount in excess of $75,000.00 pursuant to the Subcontractor Agreement;

5  (B) pre-judgment and post-judgment interest; and (C) recovery of its costs, expenses, and

6  attorneys' fees insofar as allowed by law, with such other and further relief as the Court deems

7  just, proper, and equitable.

8                                **PRAYER FOR RELIEF**

9    WHEREFORE, Defendant MINNESOTA LIMITED, LLC, through its lawyers William

10  C. Walker, Attorney at Law, and Derek S. Casey of TRIPLETT WOOLF GARRETSON, LLC,

11  prays this Honorable Court for the following relief and remedies:

12  (1)    JUDGMENT against Plaintiff THE HDD COMPANY, INC. denying Plaintiff's First

13          Amended Complaint, dismissing Plaintiff's claims with prejudice, and granting Defendant

14          Minnesota Limited, LLC recovery of its attorneys' fees, expenses, and costs, insofar as

15          allowed by law and

16  (2)    JUDGMENT against Plaintiff THE HDD COMPANY, INC. on Defendant Minnesota

17          Limited, LLC's counterclaim to include:

18      (A)    Damages in an amount in excess of $75,000.00 to remedy Plaintiff The HDD

19              Company, Inc.'s breach of contract and for indemnification;

20      (B)    Pre-judgment and post-judgment interest;

21      (C)    Recovery of Minnesota Limited's costs, expenses, and attorneys' fees as provided

22              by the parties' agreement or insofar as allowed by law;

1    With such other and further relief as the Court deems just, proper, and equitable.

2                                    **JURY DEMAND**

3         Minnesota Limited, LLC, demands a trial by jury on all issues so triable.

                                **CERTIFICATE OF SERVICE**

          I served this document through the notice of electronic filing for parties and attorneys who

are filing users in this case.

                                             Respectfully submitted,

                                        William C. Walker, #11978
                                        walkerlaw66032@yahoo.com
                                        ATTORNEY AT LAW
                                        112 West Fifth Avenue
                                        Garnett, Kansas 66032
                                        (785) 448-3747
                                        (785) 448-5529 (Facsimile)

                                             *-and-*

                                        Derek S. Casey, #15215
                                        dscasey@twgfirm.com
                                        TRIPLETT WOOLF GARRETSON, LLC
                                        2959 North Rock Road, Suite 300
                                        Wichita, Kansas 67226
                                        (316) 630-8100
                                        (316) 630-8101 (Facsimile)
                                        www.twgfirm.com

                                         /s/Derek S. Casey
                                        *Attorneys for Defendant*
                                        *Minnesota Limited, LLC*